A95A0059. STINSON v. LUMPKIN LUMBER COMPANY et al.
(460 SE2d 846)

RUFFIN, Judge.

David Stinson appeals from the trial court's grant of summary judgment to intervenor, Houston Mitchell.

This is a wrongful death action brought by Stinson, as the spouse of Betty Jean Stinson by common law marriage, after she died from injuries sustained in an automobile accident involving a vehicle owned by Lumpkin Lumber Company. Mitchell, representing Ms. Stinson's heirs-at-law, moved to intervene and prayed for the dismissal of Stinson's complaint pursuant to OCGA § 9-11-17 on the ground that Stinson could not be the real plaintiff-in-interest because he had a prior common law marriage which was never dissolved. The trial court granted the motion to intervene, and Stinson and Mitchell submitted the question of Stinson's status as party plaintiff to the court

---

[1] As to hospital authorities, see OCGA § 31-7-75 and as to the Ports Authority, see OCGA § 52-2-37.

in cross-motions for summary judgment. The trial court entered an order denying Stinson's motion for summary judgment and granting Mitchell's motion, agreeing with Mitchell that Stinson had no standing to bring the action. The court held that Mitchell was authorized to apply for appointment as administrator of Ms. Stinson's estate and ordered that the case be realigned, designating Mitchell as party plaintiff and Stinson as defendant. The matter was certified for immediate review, and we granted Stinson's application for interlocutory appeal to consider whether the trial court erred in concluding, as a matter of law, that he did not have a valid common law marriage to Ms. Stinson because of a prior undissolved common law marriage.

1. It is undisputed that Stinson resided with Lucy Crumb a/k/a Lucy Strawder from 1955 until 1958, during which time they had two children. In support of his motion for summary judgment, Mitchell submitted an affidavit given by Lucy Strawder on May 22, 1993, in which she averred that she and Stinson held themselves out to the public as husband and wife during their period of cohabitation; that she used the name "Lucy Stinson" and considered herself to be married to Stinson during that period; and that no divorce was granted dissolving her common law marriage to Stinson. Mitchell also referenced Stinson's deposition testimony in which he stated that during the time they lived together, Lucy Crumb's occupation was that of a housewife. Stinson testified further as follows: "Q. And when your second child was born, Eddie Gene Stinson, you considered her to be a housewife, her being Lucy Bell Crumb. Is that right? A. Yes sir. Q. And the house part of the housewife would be your house. Is that correct? A. When we was there. Q. I am assuming the wife part of it would be your wife. Is that right? Q. [sic] Yes sir."

In support of his motion for summary judgment, Stinson submitted his own affidavit in which he averred that he never married Lucy Strawder and never considered her to be his wife; that she never used his last name or his money; that they never signed any contracts together and never represented to any members of the community that they were husband and wife; that they never represented to the church that they were husband and wife; that Betty Jean Stinson was his common law wife; that she used his last name; and that they held themselves out to the public as husband and wife.

Stinson also submitted an affidavit given by Lucy Strawder on November 29, 1993, in which she stated that she remembered signing the May affidavit in the office of Mitchell's attorney but that she did not understand certain details in the document before she signed it. In the November affidavit, she stated that her prior statement, that she and Stinson held themselves out as husband and wife, was not true; that she never considered herself to be Stinson's wife; that she did not understand the word "cohabited" and never considered that

she and Stinson were living together as husband and wife; and that she never considered herself to have any marital rights to Stinson's money nor did they have any marital obligations to each other. Strawder also stated, with respect to the May affidavit, that when she told Mitchell's attorney that she never considered herself to be Stinson's wife, he responded that the law would determine whether she was Mrs. Stinson or not and that her opinion did not matter. Strawder referred to the birth certificate of one of her children which bore the signature of a "Lucy B. Stinson" and stated that it was not her signature; that she never used the name "Stinson" at any time in her life; and that she had always been known as Lucy Strawder or Lucy Crumb. She further averred that during the period of time between 1955 and 1958, she used the name "Lucy Crumb," and she and Stinson never bought anything together or held themselves out to the public as husband and wife.

Strawder also affirmed, as accurate and correct, a handwritten affidavit made on March 1, 1993, in which she stated that she would not marry Stinson for various reasons; she lived with him because her sick father was nearby and she did not have anyplace else to go; and the signature on the birth certificate was not hers.

The trial court's findings of fact recite that Stinson and Crumb are referred to as "husband" and "wife" on the birth certificate of one of their children. The court, apparently referring to the deposition testimony set forth above, also found that Stinson admitted his marriage to Crumb in his deposition but denied a marriage in his affidavit. The court also found that Crumb signed contradictory affidavits.

Construing Stinson's deposition testimony and affidavit attestations against him in accordance with *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), the court then concluded that the evidence showed Stinson had a common law marriage to Crumb which was never dissolved; therefore, he lacked the capacity to enter into a common law marriage to Betty Jean Stinson.

Stinson contends that his statements were not contradictory; that he consistently maintained he was never married to Lucy Crumb; and that in the deposition testimony upon which the court relied, his reference to Crumb as a housewife meant her occupation and not her marital status. Stinson also contends Lucy Crumb never held herself out as Lucy Stinson and did not sign the birth certificate as Lucy B. Stinson.

"On appeals from grants of summary judgment, it is this court's function to examine the record and determine whether the allegations of the pleadings have been pierced so that no genuine issue of material fact remains. Our review is de novo." (Citations and punctuation omitted.) *Bandy v. Mills*, 216 Ga. App. 407 (454 SE2d 610) (1995).

While it is certainly the rule in this state that a party's self-con-

tradictory testimony must be construed against him, we do not agree that the testimony the trial court construed as an admission by Stinson that Crumb was his wife must necessarily be construed in that manner. The testimony is ambiguous, at best, especially when measured against the bulk of the testimony given by Stinson in his deposition in which he steadfastly denied the existence of a marriage. In addition, having examined the birth certificates of both children, contrary to the trial court, we find no designation of Stinson and Crumb as husband and wife.

Furthermore, Crumb/Strawder's contradictory affidavits should not be disregarded or construed in the same manner as the self-contradictory testimony of a *party-witness* because she is not a party to this case. See *Prophecy Corp.*, supra. Rather, "the conflicting affidavits present a question of credibility as to a material issue. . . . [Cits.]" *Garrison v. Dept. of Human Resources*, 184 Ga. App. 449, 450 (2) (361 SE2d 860) (1987).

The foregoing demonstrates that there are genuine issues of material fact as to the existence of a common law marriage between Stinson and Lucy Crumb which should be resolved by a jury; therefore, the trial court erred in finding a common law marriage between Stinson and Crumb, as a matter of law, and in granting summary judgment to Mitchell.

2. Mitchell has moved the court to dismiss this appeal on the ground that Stinson filed for discretionary review when a direct appeal was appropriate. Having considered the motion, it is hereby denied.

*Judgment reversed. Pope, P. J., concurs. Beasley, C. J., concurs in judgment only.*

DECIDED JULY 14, 1995 — 

*Beauchamp & Associates, Robert M. Beauchamp*, for appellant.

*Bowles & Bowles, Jesse G. Bowles, Vansant, Corriere, McClure & Dasher, Alfred N. Corriere, Divine, Wilkin, Raulerson & Fields, W. Douglas Divine*, for appellees.